I know the Court has reviewed all the materials. I would like to just center on some things that we didn't. I would like to address a little bit more clearly than I did in the pleadings. This case, of course, involves the probable cause of whether or not my client committed an arson. The most damning witness in this situation, that is, the police had determined that there was probable cause, made the arrest, and it ended up that there was no prosecution. He sued then for false arrest. The most damning part of the determination of probable cause was that there was a witness ID, that is, the police said that there was a witness that identified my client inside of the industrial area where the fire basically began. What form is that statement? Because I know it's been, this is Avery Dunn, I assume, that you're talking about. I'm sorry? This is Avery Dunn you're talking about. Yes. He later denies that he made that statement. What did the police, what does the evidence show the police have to indicate that he originally did make the statement identifying him? Is it written or is it just a report of the police? Just a report by the police. Detective McKay stated that Avery Dunn was 100% certain that he saw Mr. Reed in this back area behind the manufacturing plant. And a fire marshal, Hall, used that determination in two different ways. One, to identify the arsonist, but also to say that there was arson. In essence, Hall said he couldn't figure out how that fire started. So because he couldn't figure out how the fire started and that there, he couldn't, and that Reed was there, it must be arson. So there were two statements made, or allegedly there were two statements, or allegedly there was a statement that Mr. Dunn made to these investigators. Yet when we found Mr. Dunn, and we found him very, very late, which is why the affidavit of Mr. Dunn is not very well fleshed out, we found him very late, and he said he never made that statement. And it's, with the calculation of these 1983 claims, it's important not, sometimes the analysis is merely to look at what evidence there is, but the fact that Avery Dunn comes back and says the police attributed a statement to me, I never made it, and it was so material, also is more important in this case because it shows that the police, the investigation is not only faulty, but that the police officers are proffering false evidence. That is, they are saying that evidence, material evidence was there, but in actuality it's not true. And one of the things that the Ninth Circuit really hasn't dealt with a lot is what happens when there's issues of credibility in summary judgments. Usually the issues of credibility are not addressed in summary judgments, but that would, there's a disconnect when, if a jury could listen to the officers and hear them say that Avery Dunn said something and the jury makes a decision that the officers are not telling the truth, that jury would be able to or be entitled to say that the officers lack credibility and then nothing they say should be placed, should weight be placed into it. Well, you don't judge the credibility of an uncontroverted statement. But if you have somebody saying, you said this, and somebody else comes in with an affidavit and says, I never did say that, you just have a conflict in the evidence, which I assume you're saying has to be tried. Not only does it have to be tried, but also it's not merely to subtract that in the calculation of probable cause. The determination here is, was there sufficient evidence to determine if there was probable cause to arrest Mr. Reed? And I'm not saying you might be able to cut that out of it. I mean, they may, I'm sure they will argue that they had probable cause even without Avery Dunn's statement. Which is what I'm speaking to. I think the fact that the police officers are not telling the truth about Avery Dunn goes further than merely cut that statement out. It then puts in doubt all of their observations and their investigation about what probable cause did exist. So, for instance, there was a case. Before you shift gears, though, in this case it's a little different from the usual case in which you might have an officer's report and somebody denies making the statement to the officer. Here you have, at least as I read the record, an intermediary. You know, you have Mr. Dunn talking to the fire marshal, then his report goes to the police officer. Yes. Why isn't the police officer entitled in calculating or not, whether there's probable cause or not, to rely on the fire marshal's report alone? Well, first off, the detective who made the arrest also talked or said he talked to Avery Dunn. Yes. So they both spoke to Avery Dunn. So he's not just relying on the fire marshal's report. But if the Court has asked me if the officer can just rely on that fire marshal's report without examining any of the facts behind it, it really abrogates the police officer's duty to examine the case and examine if there's probable cause. In essence, what the officer said here was, I looked at just no facts. He doesn't know how the fire started. He doesn't know the mechanism of how it started. They don't really know exactly the area where the fire started. So without knowing how that fire started, how can they determine it's arson? And secondly, how can they determine who started that fire? But I think it gets back to my question. In such a circumstance, why can't a police officer who's not expert in any of those fields rely on a fire marshal's determination? Well, I think he can to some degree. That is, if those areas are so outside of his ability to discern, he certainly should. But I don't think that excuses him from looking at the facts of the fire. It may not in terms of good police practice, but in terms of determining probable cause, isn't that enough? I think you have to look at the evidence. I don't think there's a shortcut to determining probable cause. I think you still have to look at it. And remember, this is not a case where they're making instantaneous decisions. This was a case where the fire was out. It had been 30 days, and he had had plenty of time to read the reports and make a decision. In essence, I don't think that it's an important distinction of merely saying, how did that fire start? Give me your opinions versus do you have an opinion about probable cause? Because in essence, this fire marshal did his own investigation. He came up with his own conclusions. And I don't think that the officer can abrogate his position and just say, well, this fire marshal said that Mr. Reed did this crime, and therefore it's good enough for me, especially since part of the calculus of the fire marshal was that Mr. Reed was seen in and around where the fire was started, and we know now that that's not true. I diverted you from talking about some other things with my question. Go ahead. Unless you want to reserve, you've got about a minute, close to two minutes left for rebuttal. Thank you. The point I was making is that once an officer starts to make, starts telling, well, for the lack of better words, lies about probable cause, then you have to look at his, then his entire statement of probable cause comes into doubt. There was a federal practice and procedures that discusses summary judgment and credibility, 10 federal practice and procedures, civil third, section 2726. It's a good compilation of when credibility issues that come into a summary judgment can defeat the summary judgment. And in this case, what we're saying is Officer McKay and the fire marshal make up the story, saying that Mr. Reed was seen at the area where the fire started. And the question then becomes, it's not just to take that statement out, but also, and I'm repeating myself to some degree, but also it puts into doubt those officers' credibility in anything they say. And then can anything they say now become, have any weight? Because the jury could decide to throw out all their testimony because they have made material misrepresentations about specific facts. Thank you, counsel. We'll save the rest of your time for rebuttal. Thank you. Good morning. May it please the Court, Pete Ferguson for the City of Chino and Officer McKay in this matter. It's not an issue of whether or not Mr. Reed was an arson. The issue is whether or not, of course, probable cause existed from the officer's perspective of his investigation and the information that he had. It deals with the quantum and the quality of the information, what he had, and it's that balancing test that's always difficult for police officers and sometimes very difficult for courts to determine that's sufficient for probable cause to arrest or that's not sufficient for probable cause to arrest. Here, however, I've listed in the briefs, and I'm not going to go through the 15 to 18 different facts that the officer had, but there are some facts that I want to talk about as to the quality and what those facts mean because that's really where the law goes. It's what's the interpretation of those facts. Some people may have a slighted meaning or ability to understand a fact as it relates to the ultimate crime, and some people, some judges, some lawyers, some policemen may look at a fact with a lot more importance. And that's what we have here. Here, I think, important fact is the schoolgirl, the high schoolgirl who overheard three kids talk. And of itself, it's the high schoolgirl hears three kids talk, but it turns out one of those boys is the defendant's son. Now, there's a dispute as to what exactly was said. Ms. Branch, the high schoolgirl, said one thing. When the investigator spoke to the other two boys, they kind of put a little spin or a twist to it. But what's not a dispute is the quote that was attributed to the plaintiff's son. After acknowledging there's a fire that he sees from the high school, after acknowledging that his dad just got fired from there, says, and they rebelled. That can mean a lot of things, but to a trained investigator, that could mean, gee, the son overheard dad in this plan to create some havoc. That's what that could mean. It's sufficient. It's in of itself might not be probable cause, but it sure shows something. The second issue is the lie detector. By itself, it can't constitute probable cause. And I agree. We have the lie detector test. He took a lie detector test two times, the same one right after the other. He failed both. The polygraphist said he was deceptive, showed deception in the critical issues of his participation in the arson. Now, we know a lie detector polygraph test is not admissible in a court of law for purposes of guilt. We know that it's not the most reliable scientific data that's there, but it sure shows and gives a police officer some indicia of a fact. By itself, not sufficient. But by itself, with the other information the officer is collecting for probable cause determination is important. First, and also because the polygraph wasn't done by Chino Police Department. It was done by an independent police agency. Some importance to that. Insignificant by itself, but again, it paints a big picture. That he was seen, Mr. Reed was seen across the street during the time of the fire. People go out and see fires, I guess. But for a trained police officer to be there across the street at the scene is a significant fact. It shows proximity. It shows a lot of things. That an officer, a trained officer can say, hmm, he is at the scene. There's the body of the crime is close by. You also have his truck was seen earlier in the day in the parking lot of the facility. Just a minutia fact, but totality, it's growing as things go on. That he had the ability, strike that, the nature of the fire. He had the fire investigator, trained individual, highly qualified, who didn't investigate the fire after the fact. In fact, was called to the fire while it's going on. And he gleaned some important things. He saw black smoke rising high in the facility and rapidly moving. Which to him would mean, not accidental, which would mean sabotage. Which would mean an intentional act of someone starting a fire. Meaning an individual is involved. Taking that information with Mr. Reed. Mr. Reed was fired the day before. Mr. Reed said when he gets fired to the clerk handing him his check, do you know any good lawyers? Insignificant statement by itself, but again, it's growing. The fact that the fire was in such a place that someone probably would have to have knowledge of the facility. Someone would have to have worked there or at least seen the blueprints of this facility. That the fire started in such a way that someone would have to have the working knowledge to start a fire in this combustible styrofoam things. I mean, I don't understand all of what the fire investigator, his technology of chemistry is involved. But he does conclude that it takes someone with a high knowledge and ability to get this thing going. Mr. Reed had that, all of that ability. He worked there. He got fired from there. He wants a lawyer. The indicia of anger is there. It's growing. There are other factors in the briefs I don't need to go into. But a policeman makes a decision to arrest or not to arrest. He only needs probable cause. He's not there to, he's not the judge of guilt or not guilty. He's there to arrest an individual because he believes that there's probable cause to arrest. Now, getting back to Avery Dunn, and it's at base stamp 000244, is the singular two-sentence declaration of Avery Dunn. And I would submit that Avery Dunn's declaration doesn't necessarily say what the plaintiffs think that it says. It merely says, following the review of this statement, I do not concur with its contents and did not identify Thomas Reed as the person I saw that day. Attached to that declaration is base stamp 245, is the police officer's review of the interview of Mr. Dunn. And there are circles in certain parts of the statement. In fact, there are four circles circled. Now, I guess that is supposed to mean he, Mr. Dunn, didn't believe with that part of the statement. One can then assume that that what's not circled is agreed to in the statement by the police officer. How can you reach that conclusion? An affidavit says he doesn't, he did not identify Thomas Reed as the person he saw on the day of the fire, period. Yes, but in the statement it does say I did see a person with a baseball cap, a white T-shirt and jeans. You also have people across the street when they identify him saying, well, I did see Mr. Reed with a baseball cap, white T-shirt and blue denim shorts. But more importantly, the district court, Judge Phelps, knew the danger here and she writes in her order granting summary judgment, I'm not taking any evidence as it relates to Mr. Dunn for purposes of finding probable cause. That's the important issue, really. Counsel has raised an issue, but it deals with credibility. I think Judge Canby is correct. Credibility has nothing to do with this issue since it was an issue that the district court didn't even utilize or analyze in her determination. She went through the facts. She analyzed the facts. She determined as the trier of those facts for purposes of probable cause that there was sufficient basis. With that, I have nothing further unless there are any questions. Thank you, counsel. Thank you. We'll give you two minutes for rebuttal. Real quick. We did raise the issue of credibility in the lower court. The court just didn't capitalize on it or look at it. Probable cause should make common sense. That is, when you look at all the facts, not just take a few facts that are inculpatory, but when you look at all the facts, it should come to probable cause. The theory of the police is that in broad daylight, during operation, while the business is in operation, while the individuals who would know who Thomas Reed was and that he had been laid off, that Thomas Reed would go through the business with people who would see him there, go into the back, and start a fire. Now, an extremely volatile product. Now, that product doesn't take a genius to set a fire. It is as volatile as gasoline. That is, the pentane gas that emits from the polystyrene beads is as volatile as gasoline. Its flash point is at least 500 degrees. A cigarette ash is or a cigarette burns at and its sitting state is at 500 degrees. When you smoke it, it's about 1,400 degrees. It is extremely easy to light. In fact, there are prohibitions of the employees to smoke in where the area of the polystyrene beads are. The concept is that rather than wait until after the business is closed and the business has virtually no employees at night, it is surrounded by vacant fields, it only has a 12-foot fence, and the polystyrene covers the rear of the storage yards, which is open except for the one fence. Rather than throw an ignition source like a flare over when nobody's there, Mr. Reed would rather, during daylight hours, right when everything is busy, would go in there and start the fire in an area specifically where people were working, moving bags. That is, they determined a general area where the fire started. It was not in some remote area of this two- or three-acre storage, backyard storage farm, but rather right where these individuals were moving bags with forklifts. And when you look at the common sense, that just does not make sense. And we want police officers to make arrests, but we want them to use common sense. So, in essence, what the police officer is saying is that Mr. Reed shunned the cover of dark when most arsons occurred to do an arson the day after he was laid off in broad daylight, basically in front of the workers that he worked with, and that doesn't make sense. Now, counsel makes much of the statement of his son made to two or three other boys, which was overheard by another person who reported it to the police. The police interviewed those three young men. They all made consistent statements that it was not inculpatory, it was exculpatory. Well, it certainly wasn't exculpatory, but it wasn't inculpatory. Again, the theory that the police have does not make sense. Mr. Reed would park in a parking lot in the morning for an afternoon fire and have his vehicle there so people can see it. It's not a big parking lot. There's a photograph in the exhibits. It's not a big parking lot. People would see it. That same parking lot is where people take lunch. So it doesn't make sense that a person was going to commit such a terrible crime. And remember, this product, I think there was 1.4 million pounds of polystyrene beads that all went up in smoke very quickly because it's as volatile as gas that could have killed somebody. It is not something, it is a horrible criminal act. So they're saying that Mr. Reed would park at the place of business that morning and then, as I was mentioning earlier, walk inside during broad daylight in front of everybody. Counsel also mentioned that. You're over time, so why don't you wrap up with it. One other thing. It said that Mr. Reed was angry. There is no evidence of that. In fact, the evidence is exactly the opposite, that everyone that were interviewed said Mr. Reed was a very even-mannered man, that he was not angry. And when he spoke about a lawyer, he said his wife was asking about a lawyer. Counsel and the police gill their lily here. Thank you. Thank you, counsel. The case, as heard, will be submitted for decision. The next case on the calendar, United States v. Sharing Housing, is submitted on the briefs. And we'll proceed with argument in Orkin v. Taylor. Thank you.
judges: Canby, Thomas, Conlon